UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOMINIQUE HUNTER,

Plaintiff,

v.

CHERYL MCMAHON, et al.,

Defendants.

20-CV-18-LJV-MJR
DECISION & ORDER

This is the second round of motions to dismiss in this case, which began more than four years ago in January 2020. Docket Item 1. On October 27, 2023, after the United States Court of Appeals for the Second Circuit vacated a prior order dismissing the amended complaint, Docket Item 49, the *pro se* plaintiff, Dominique Hunter, filed a second amended complaint, Docket Item 52. Like the complaint and amended complaint, Docket Items 1 and 6, the second amended complaint alleged various federal and state law claims arising from the removal of Hunter's minor child, C.W., from her care. Docket Item 52. The defendants then moved to dismiss the second amended complaint. Docket Items 61 and 64.

On July 18, 2024, United States Magistrate Judge Michael J. Roemer, to whom this case had twice been referred, *see* Docket Items 19 and 48, issued a report and recommendation (the "second R&R")[1] finding that this Court should grant the motions to dismiss. Docket Item 73. That recommendation encompassed both the motion filed by

[1] As explained below, Judge Roemer previously issued another report and recommendation in this case. *See infra*.

defendants Niagara County Family Court Judge Kathleen Wojtaszek-Gariano and Acting Niagara County Family Court Judge Thomas DiMillo (the "judicial defendants"), Docket Item 61, and the motion filed by defendants Niagara County Department of Social Services, Child Protective Services ("Niagara County CPS"), Assistant Public Defender Lawrence Lindsay, Niagara County CPS Employee Cheryl McMahon, Niagara County, and "Niagara County Clerk Employee[s] (Names Unknown) Jane Doe and others" (collectively, the "county defendants"), Docket Item 64. *See* Docket Item 73 at 46. Judge Roemer also denied Hunter's motions for an extension of time to serve the two remaining defendants—the only defendants who had not moved to dismiss the complaint: Vanessa Guite, a lawyer that Hunter hired to represent her in Niagara County Family Court proceedings, and Carol Henderson, a Niagara County CPS employee. *See id.* at 47 n.28; *see also* Docket Items 56 and 63 (Hunter's motions for extension of time to serve).

After Hunter objected to the second R&R, Docket Item 74, the judicial and county defendants responded, Docket Items 76 and 77. Hunter did not reply in support of her objections, and the time to do so now has passed. *See* Docket Item 75 (setting briefing schedule on objections).[2]

---

[2] On August 28, 2024, Hunter filed a notice of change of address. Docket Item 78. But she did not seek an extension of time to reply to the defendants' objections, nor did she file anything else in this case before or after September 10, 2024—the deadline for her reply. In any event, for the reasons that follow, Hunter has failed to identify any errors in the second R&R that would require this Court to reject Judge Roemer's recommendation. In other words, this Court's decision does not rest on Hunter's failure to refute any arguments made by the judicial or county defendants in response to Hunter's objections.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review de novo those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the second R&R; the record in this case; the objections and responses; and the materials submitted to Judge Roemer. Based on that de novo review, the Court accepts and adopts Judge Roemer's recommendation to grant the judicial and county defendants' motions to dismiss.

## **PROCEDURAL BACKGROUND**

As noted above, this is not the first time that Judge Roemer and this Court have considered motions to dismiss in this case. Judge Roemer previously issued a report and recommendation (the "first R&R") recommending that this Court grant the county and judicial defendants' motions to dismiss Hunter's first amended complaint; the first R&R also denied Hunter's motion for an extension of time to serve Guite and Henderson. Docket Item 34. This Court then adopted the first R&R's recommendation to dismiss. Docket Item 40. More specifically, the Court found that it lacked subject matter jurisdiction over the complaint under the *Rooker-Feldman* doctrine and that Hunter's claims therefore should be dismissed without leave to amend. *Id.* at 4-7. In light of that holding, the Court did not reach any of the alternative grounds for dismissal of Hunter's claims addressed in the first R&R. *See id.* at 6 n.5.

On July 21, 2023, the Second Circuit reversed this Court's decision. Docket Item 49; *see Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023). That court held that "*Rooker-Feldman* applies when 'the losing party in state court filed suit in federal court

after the state proceedings ended'" and that state proceedings have not ended "[w]hen an appeal remains pending in state court." *Hunter*, 75 F.4th at 65 (emphasis omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). Because Hunter's state court appeal was pending when she "filed her federal suit," the court found, *Rooker-Feldman* did not bar this Court from exercising jurisdiction over her claims. *Id.*

Further, the Second Circuit noted that "even if [Hunter's] state proceedings had reached finality," *Rooker-Feldman* still "would not bar all of [her] claims" because that doctrine does not apply to "claims based on an opponent's misconduct that precedes the state court proceeding, if the plaintiffs' alleged injuries were merely ratified by the state[ ]court judgments rather than caused by them." *Id.* at 65, 71 (emphases omitted) (quoting *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021)). In other words, the Second Circuit held that "*Rooker-Feldman* applies only when the plaintiff complains of injuries caused by a state court judgment, and not all of Hunter's alleged injuries were so caused." *Id.* at 71 (internal citation and internal quotation marks omitted).

For those reasons, the Second Circuit "reverse[d] the judgment . . . insofar as it dismissed Hunter's complaint for lack of subject matter jurisdiction [under] the *Rooker-Feldman* doctrine"; "vacate[d] th[at] judgment insofar as [this Court] denied Hunter's [requests] for leave to amend and for additional time to serve defendants"; and "remand[ed] for further proceedings consistent with [its] opinion." *Id.* at 73. The Second Circuit declined to "affirm the judgment of [this Court] on [the] alternative grounds" for dismissal identified in the first R&R, noting its position as a "court of review, not of first

view," but stated that "[t]he defendants [could] direct those arguments to [this Court] in the first instance." *Id.* at 73 n.15 (citation omitted).

After the Second Circuit issued its decision, this Court referred the case back to Judge Roemer for further proceedings consistent with its previous referral order. Docket Item 48. Judge Roemer then granted Hunter's requests for leave to amend her complaint and for an extension of time to serve defendants Guite and Henderson. Docket Item 51. Hunter then filed her second amended complaint against the judicial defendants, the county defendants, Guite, and Henderson. Docket Item 52. Both the judicial defendants and the county defendants again moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted, Docket Items 61 and 64; Hunter responded, Docket Item 69; and the defendants replied, Docket Items 71 and 72. In addition, Hunter again moved for service by the United States Marshals Service and for an extension of time to serve Guite and Henderson. Docket Items 56 and 63.

Judge Roemer then issued the second R&R, again finding that this Court should grant the motions to dismiss filed by the judicial defendants and the county defendants. Docket Item 73. More specifically, Judge Roemer found that:

> (1) all claims against [the judicial defendants] are barred by judicial immunity; (2) Niagara County CPS is not an entity subject to suit; (3) the Court must abstain from exercising jurisdiction over all [Hunter's] equitable and monetary claims related to the family court proceedings [under *Younger* and domestic relations abstention]; and (4) regardless of the jurisdictional barriers, [Hunter] has failed to allege any viable federal or state claim on which relief may be granted.

*Id.* at 14-15. Judge Roemer therefore recommended that the claims against the judicial and county defendants be dismissed without leave to amend. *Id.* at 45-46. He also denied Hunter's motions for service and an extension of time to serve Guite and

Henderson, *id.* at 47 n.28; recommended that some of Hunter's claims against those defendants be dismissed; and recommended that Hunter be ordered to show cause why her remaining claims against them should not be dismissed. *Id.* at 46-47.

Hunter objected to the second R&R, Docket Item 74, and the parties briefed those objections as described above.

## **DISCUSSION**[3]

Hunter raises two specific objections to the second R&R. Docket Item 74. First, she argues that Judge Roemer erred in holding that the judicial defendants are entitled to judicial immunity. *See id.* at 13, 17-18. Second, she argues that Judge Roemer erred in finding that *Younger* and domestic relations abstention bar all claims stemming from her family court proceedings.[4] *See id.* at 15-20. And Hunter raises a number of general objections to Judge Roemer's findings as well. *See generally id.*

[3] The Court assumes the reader's familiarity with the facts alleged in the second amended complaint, *see* Docket Item 52, and Judge Roemer's analysis in the second R&R, *see* Docket Item 73, and refers to them only as necessary to explain its decision here.

Hunter attached a number of exhibits to her objections, Docket Item 74 at 22-69, which appear to be court filings from the state court proceedings. "Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Bey v. Messina*, 2021 WL 2076215, at *2 n.1 (N.D.N.Y. May 24, 2021) (citations and internal quotation marks omitted). Nevertheless, this Court has reviewed Hunter's exhibits and finds that they do not include any information that would alter its analysis of the second R&R.

[4] Hunter also argues that *Rooker-Feldman* does not bar her claims here because she "is not a 'loser' in state court proceedings." *See* Docket Item 74 at 16, 18. But, consistent with the Second Circuit's decision in this case, the second R&R does not recommend dismissal of any of Hunter's claims based on *Rooker-Feldman*, *see* Docket Item 73, and so this Court need not consider her argument that the doctrine does not apply.

For the reasons that follow, the Court finds that all Hunter's objections lack merit. This Court therefore grants the judicial and county defendants' motions to dismiss.

## I. JUDICIAL IMMUNITY

As Judge Roemer explained, judges have broad immunity from suit. *See* Docket Item 73 at 15. Indeed, "[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Such "immunity is overcome in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (citations and italics omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted); *see* Docket Item 73 at 15 (same). A plaintiff's "allegations of bad faith or malice" are not enough to defeat judicial immunity.[5] *See Mireles*, 502 U.S. at 11.

[5] Further, "statutory judicial immunity" bars all claims for injunctive relief against judges for acts taken in their judicial capacity unless the plaintiff alleges that "'a declaratory decree was violated' or that 'declaratory relief was unavailable.'" *McCluskey v. N.Y. State Unified Ct. Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011) (summary order) (quoting 42 U.S.C. § 1983).

The roots of statutory judicial immunity lie in *Pulliam v. Allen*, 466 U.S. 522 (1984), where the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id.* at 541-42. Congress then amended section 1983 to bar the granting of injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Hunter has not alleged that either of the judges named here violated "a declaratory decree" nor that such relief was unavailable. Instead, she asserts that the judges were not acting in their judicial capacities when they committed the acts that underlie her claims. *See* Docket Item 74 at 14, 17. But that argument fails for the reasons explained in this decision.

Hunter says that Judge Roemer erred in finding that judicial immunity bars her claims against the judicial defendants because those claims are based on an "extra-judicial conspiracy" with the other named defendants. Docket Item 74 at 14, 17. She also relies on Rule 3.1 of the American Bar Association's Model Code of Judicial Conduct, which prevents judges from taking certain actions when "engaging in extrajudicial activities"; Hunter says that the judicial "defendant[s] . . . violated all parts of [that rule]." Docket Item 74 at 17. And she argues that "[t]he issues [in this case] involve [federal] civil rights issues" and "[federal and state] criminal law" and therefore are not within "family court jurisdiction." *Id.* at 16. Based on all that, Hunter says,

> [the judicial] defendant[s] . . . violated all parts of [Rule 3.1] and . . . because [they took] part in and join[ed] the extra-judicial conspiracy to violate the law and cover up for civil rights and criminal law violators[,] no absolute judicial immunity . . . immunize[s their] conduct[,] which [was taken in the] "clear absence of all jurisdiction[.]"

*Id.* at 17.

Hunter has failed to show that any exceptions to judicial immunity apply here. First, as Judge Roemer noted, all of Hunter's claims against Judges DiMillo and Wojtaszek-Gariano are based on decisions that they made in their roles as the presiding judges in Hunter's family court proceedings. Docket Item 74 at 15; *see* Docket Item 52. "[A]cts arising out of, or related to, individual cases before [a] judge [generally] are considered judicial in nature." *See Bliven*, 579 F.3d at 208, 210, 214 (rejecting "[the plaintiff's] contention that the actions of the family court judges in ruling on . . . vouchers [he submitted for public defender compensation] . . . were not judicial acts"); *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 38 (2d Cir. 2021) (summary order) (holding that judge was "acting in his judicial capacity when presiding over [a] custody case and issuing orders concerning custody and visitation").

Hunter's conclusory assertion that the judicial defendants were part of an "extra-judicial conspiracy" in her family court proceedings does not change the judicial nature of their actions. *See* Docket Items 52 and 74. Indeed, Judge Roemer addressed that very argument in the second R&R, noting that "[t]he [second amended] complaint contains no specific allegations that would establish a conspiracy" and that "even if [Hunter] had successfully alleged a conspiracy," absolute immunity still would apply. Docket Item 73 at 16. As Judge Roemer correctly explained, because "absolute immunity spares the official any scrutiny of [that official's] motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Id.* (quoting *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir. 1987)). Hunter's objections do not provide any reason to revisit Judge Roemer's conclusion on this point, and this Court sees none. *See Patterson v. Rodgers*, 708 F. Supp. 2d 225, 235 (D. Conn. 2010) ("[A]llegations of conspiracy do not defeat judicial immunity.").

Hunter's assertion that the judicial defendants "violated all parts of" Rule 3.1 of the Model Code of Judicial Conduct misses the mark for a few reasons. First, her assertion is wholly conclusory: She does not provide any specific examples of "extrajudicial" conduct falling within Rule 3.1, much less any actions that might violate it. *See* Docket Item 74; Model Code of Jud. Conduct Canon 3, R 3.1 (Am. Bar Ass'n 2024). And even if she had alleged such conduct, judicial immunity is not defeated merely because a plaintiff alleges that a judge violated the Model Code.

In *Blanchard v. Doe*, 2019 WL 2211079 (E.D.N.Y. May 22, 2019), for example, the plaintiff moved to amend her complaint to add "claims that [the judge presiding over

her family court proceedings] had a financial interest in [the plaintiff's] child support enforcement proceedings that required [the judge's] recusal under Canon 3 of the Model Code of Judicial Conduct and [federal law]." *Id.* at *2. The court found that "[a]t best, the [p]roposed [a]mended [c]omplaint c[ould] be read to allege that [the judge] acted in excess of her authority based on an alleged conflict of interest" and concluded that the "allegation would not survive a motion to dismiss based on the judicial immunity doctrine." *Id.* at *4. The same logic applies here: Hunter cannot escape absolute judicial immunity simply by invoking the Model Code.

Finally, the Court rejects Hunter's contention that the judicial defendants acted in the "absence of all jurisdiction." Docket Item 74 at 17; *see Mireles*, 502 U.S. at 11. "As . . . family court judge[s]," Judges DiMillo and Wojtaszek-Gariano "had jurisdiction to decide issues of child custody and visitation" under New York law. *See Thomas*, 857 F. App'x at *38 (citing N.Y. Fam. Ct. Act § 651). Hunter's assertion that her claims in this case involve violations of criminal law and of her civil rights—rather than matters of family law—does not change that one iota. *See* Docket item 74 at 16-17. And Hunter's allegations of "bad faith"—which again are conclusory—are irrelevant: As noted above, even acts taken in bad faith will not strip a judge of immunity. *See Mireles*, 502 U.S. at 11; *Thomas*, 857 F. App'x at *38 (allegations of judge's bad faith, "illegal[]" custody award, and "incorrect" judicial decisions did not strip him of judicial immunity).

In sum, Judge Roemer did not err in finding that judicial immunity bars Hunter's claims against the judicial defendants, and this Court accepts his recommendation to grant their motion to dismiss.

## II. ABSTENTION DOCTRINES

Judge Roemer concluded that two abstention doctrines barred this Court from exercising jurisdiction over Hunter's claims for damages and equitable relief stemming from her family court proceedings. Docket Item 73 at 17-26. More specifically, he found that Hunter's claims for "injunctive and/or declaratory relief terminating the family court proceedings in her favor and returning C.W. to her custody" were "barred by the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 45 (1971)." Docket Item 73 at 18. And he further found that regardless of the relief sought, domestic relations abstention barred this Court from exercising jurisdiction over *any* of Hunter's claims based on the defendants' conduct in Hunter's family court proceedings. *Id.* at 24-26; *see Deem v. DiMella-Deem*, 2019 WL 1958107, at *13 n.7 (S.D.N.Y. May 2, 2019) ("[T]he domestic relations abstention doctrine clearly does apply to bar even [the p]laintiff's claims for monetary relief."), *aff'd*, 800 F. App'x 62 (2d Cir. 2020) (summary order).

Hunter says that Judge Roemer erred in finding that those abstention doctrines apply here. Docket Item 74 at 15-20. The Court therefore addresses her objections with respect to each doctrine.

### A. *Younger* Abstention

Hunter says that her claims fit within one or more of the exceptions to *Younger* abstention and that Judge Roemer's finding that this Court must refrain from exercising jurisdiction under *Younger* therefore was incorrect. *See id.* at 18. This Court disagrees.

As the second R&R explains, "[t]here are 'two tightly defined exceptions to the *Younger* abstention doctrine,'[—]namely the 'bad faith [or harassment] exception' and

the 'extraordinary circumstances' exception." Docket Item 73 at 20 (quoting *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16, 18 (2d Cir. 2012) (summary order)); *see Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002). To meet the "bad faith" or "harassment" exception, "the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp.*, 282 F.3d at 199. Moreover, the federal plaintiff "must have no reasonable expectation of obtaining a favorable outcome." *Id.* And to meet the "extraordinary circumstances" exception, the federal plaintiff must show that "the state court [is] incapable of fairly and fully adjudicating the federal issues before it." *Id.* at 201 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). The Second Circuit has identified "two predicates for application of this exception: (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Rhee-Karn v. Burnett*, 2014 WL 4494126, at *6 (S.D.N.Y. Sept. 12, 2014) (emphasis omitted) (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 201).

Hunter says that the "bad faith and harassment" exception applies because "[d]efendants McMahon and others fabricated" child abuse allegations against her, leading to the termination proceedings in Niagara County Family Court. *See* Docket Item 74 at 18-20. But Judge Roemer addressed that very argument in the second R&R. *See* Docket Item 73 at 21-22.

As Judge Roemer explained, the second amended "complaint acknowledges that the [n]eglect [p]etition was filed"—thus beginning the family court proceedings—"after

McMahon went to [Hunter's] home to investigate a complaint of abuse and found C.W.[, who was ten years old at the time,] alone at the residence." *Id.* at 21; Docket Item 52 at 1, 3, 13; Docket Item 74 at 8-9 (repeating the same facts). In other words, Hunter's own allegations belie any argument that the proceedings were *initiated* with an illegitimate motive. *See Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 638, 640 (2d Cir. 2020) (summary order) (holding that bad faith exception to *Younger* did not apply notwithstanding plaintiff's allegations that "[the] proceeding . . . to investigate . . . child abuse or neglect [was] based on . . . false allegations" where "case was initially brought to the attention of a mental health counselor by the accusations of [the plaintiff's] daughter, not by the reporting of a [Vermont Department of Children and Families] employee"); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 356 (E.D.N.Y. 2014) (holding that because "the [p]ending [s]tate [c]ourt [a]ction, and [the d]efendants' roles in those proceedings, were legitimate in their purpose"—which was "to determine . . . child custody and child support obligations"—"even [assuming the d]efendants' execution of the state proceedings was unconstitutional to any degree, the bad faith or harassment exception d[id] not apply"). This Court sees no reason to disturb Judge Roemer's conclusion on this point.

Moreover—and as Judge Roemer also found—Hunter has successfully appealed at least one state court decision already and therefore cannot be said to "have no reasonable expectation of obtaining a favorable outcome." *Diamond "D" Const. Corp.*, 282 F.3d at 199; *see* Docket Item 73 at 21-22. And because Hunter can appeal any family court decision that she believes to be incorrect, unconstitutional, or otherwise illegitimate, the "extraordinary circumstances" exception does not apply either. *See*

*McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) (holding that *Younger* abstention applied where federal plaintiff had not shown that he lacked an adequate state remedy and noting that "nothing precludes [the p]laintiff from raising [his constitutional] claims [for violations of his federal rights] in a state appellate court at the conclusion of the [f]amily [c]ourt proceedings"), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order).

"[A] plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies." *Diamond "D" Const. Corp.*, 282 F.3d at 198. Hunter did not meet that burden here. And so Judge Roemer did not err in holding that *Younger* abstention bars her claims for injunctive and declaratory relief based on the defendants' conduct in the course of her family court proceedings.

**B. Domestic Relations Abstention**

The domestic relations exception—which "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in diversity cases, *see McKnight*, 699 F. Supp. 2d at 516 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992))—"clearly does not apply in cases before this Court on federal question jurisdiction," *Pappas v. Lorintz*, 832 F. App'x 8, 11-12 (2d Cir. 2020) (summary order) (citations and internal quotation marks omitted). But as the second R&R explains, district courts properly "exercise 'domestic relations *abstention*' where a litigant's claims are 'on the verge of being matrimonial in nature' and where 'there is no obstacle to their full and fair determination in state courts.'" *Id.* at 12 (quoting *Deem v. DiMella-Deem*, 941 F. 3d 618, 620-21 (2d Cir. 2019)); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see* Docket Item 73 at 22-26.

Hunter says that Judge Roemer erred in finding that domestic relations abstention applied to her claims because "[t]his case involves civil rights, . . . criminal law, tort[,] and negligence claims that cannot be litigated in [Niagara County F]amily [C]ourt because that court simply has no jurisdiction or authority to entertain such issues." Docket Item 74 at 18. Further, she says, "[t]here could be no full and fair litigation of the claims raised in this civil rights lawsuit [because] such claims are not raised in . . . family court . . . proceedings." *Id.*

The fact that Hunter seeks to bring claims under federal civil rights law, as well as claims under tort and criminal law, does not render domestic relations abstention inappropriate here. On the contrary, and as the second R&R explains, "regardless of how [Hunter] frames or labels these claims, they arose in the context of a child custody proceeding in state court, and therefore this Court must abstain from exercising jurisdiction over them." Docket Item 73 at 24 (citations omitted). Indeed, *Deem v. DiMella-Deem*—the case in which the Second Circuit recently affirmed the existence of a distinct domestic relations abstention doctrine—involved claims under "42 U.S.C. §§ 1983 [and] 1985" similar to those raised here: that "[the d]efendants conspired to maliciously prosecute [the plaintiff] and to violate his right to intimate association with his children" in the course of family court proceedings. *Deem*, 941 F. 3d at 620-21; *see Ortiz v. Tinnerello*, 2021 WL 11593793, at *5 (D. Conn. Jan. 20, 2021) (domestic relations abstention doctrine applied when "[the p]laintiff's constitutional claims 'begin and end in a domestic dispute'" (quoting *Schottel v. Kutyba*, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009))). So just as domestic relations abstention applied in *Deem*, so it applies here.

Moreover, the fact that Hunter did not raise these claims in the family court proceedings does not mean that she was denied a "full and fair opportunity" to litigate them. Hunter says that she could not have raised some of the claims that she presses here due to the "timing and sequence of events"; the fact that certain documents "were not available to [her] at the time of the . . . family court proceeding[s]"; and because the proceedings were in family court. Docket Item 74 at 11, 18. But Hunter provides no reason why she cannot raise her constitutional and other claims in those proceedings now, including on appeal as necessary.[6] *See Evans v. Adams*, 2024 WL 306240, at *4 (E.D.N.Y. Jan. 26, 2024) (plaintiff had not established existence of "an[] obstacle impeding the full and fair determination of his state court action" where he could "raise those constitutional claims in the state court, including on appeal if necessary"). And because state courts can and do consider constitutional claims, the simple fact that Hunter wishes to raise such claims does not mean that she cannot raise them in state court. *See McKnight*, 699 F. Supp. 2d at 521.

In sum, as Judge Roemer stated, "there is no indication in the record that there is any obstacle to a full and fair determination of [Hunter's] claims" in the New York state courts. Docket Item 73 at 25. "Instead, it is clear from the record that [Hunter] has been able to fully litigate her custody claims as to C.W. in state court, including through the filing of appeals." *Id.* And "[t]o the extent [Hunter] alleges that her constitutional rights were violated, or that other torts"—or even crimes—"were committed against her[] during the state court proceedings, there is no basis to conclude that [she] could not

[6] The second R&R notes that "the family court proceedings are ongoing." Docket Item 73 at 19 n.11. Hunter does not claim otherwise in her objections. *See* Docket Item 74.

and cannot make such challenges in that venue." *Id.* The Court therefore finds that Judge Roemer did not err in recommending that this Court abstain from exercising jurisdiction over Hunter's claims for relief based on the defendants' conduct in the course of her family court proceedings.

## III. HUNTER'S OTHER OBJECTIONS

Hunter also raises several general objections to the second R&R. For example, she argues that it is "clearly erroneous and contrary to law." *See* Docket Item 74 at 5 (capitalization omitted). She also repeats factual claims from her second amended complaint without explaining in any specific way how Judge Roemer erred in his analysis of those allegations. *See id.* at 8-11; Docket Item 52 at 3-6.

"When only a general objection is made to a portion of a magistrate judge's report[ and ]recommendation, the Court subjects that portion . . . to only a clear error review." *Teaque v. Mullen*, 2020 WL 858355, at *3 (N.D.N.Y. Feb. 21, 2020) (emphases omitted) (citing, *inter alia*, Fed. R. Civ. P. 72). Nevertheless, although not required to do so, this Court has reviewed de novo the second R&R in its entirety, and it finds no basis to depart from Judge Roemer's thorough and well-reasoned opinion. It therefore adopts the second R&R's recommendation to grant the judicial and county defendants' motions to dismiss.

## IV. LEAVE TO AMEND

Generally, a court "should not dismiss" a *pro se* complaint—or any of its claims—"without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). And Hunter has requested leave to amend her complaint again,

at least to supply the name of the Jane Doe defendant sued as an employee of the Niagara County Clerk's Office. Docket Item 74 at 21.

The Court nonetheless declines to grant further leave to amend. Many of the defects in Hunter's claims against the judicial and county defendants are jurisdictional; "better pleading will not cure" them. *Cuoco*, 222 F.3d at 112. And while some of Hunter's claims are not jurisdictionally barred, Hunter already has twice amended her complaint. *See* Docket Items 6 and 52 (first and second amended complaints). The Court therefore agrees with Judge Roemer that leave to amend would be "futile," *see* Docket Item 73 at 45-46, and therefore dismisses Hunter's claims against the judicial and county defendants without leave to amend.

## V. DEFENDANTS GUITE AND HENDERSON

As noted above, Judge Roemer denied Hunter's motion for an extension of time to serve Guite and Henderson, who still have not been served some four years into this litigation. *Id.* at 46-47, 47 n.28. He further recommended that some of Hunter's claims against those defendants be dismissed for lack of subject matter jurisdiction and that Hunter be ordered to show cause why her remaining claims should not also be dismissed. *Id.* at 46-47.

In her objections, Hunter asks this Court to grant her motions for an extension of time to serve Guite and Henderson (or to enter default judgment against them). Docket Item 74 at 20. The Court construes this as an appeal of Judge Roemer's denial of those motions. "[A]ny appeal from a non-dispositive decision by a magistrate judge . . . is reviewed under a 'clearly erroneous or contrary to law' standard." *United States v. Williams*, 339 F. Supp. 3d 129, 132 (W.D.N.Y. 2018) (quoting 28 U.S.C. § 636(b)(1)(A)).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 132-33 (quoting *United States v. Feneziani*, 2007 WL 1613630, at *1 (W.D.N.Y. June 1, 2007)). Because the Court can discern no error, let alone clear error, in Judge Roemer's analysis, it affirms Judge Roemer's denial of Hunter's motions.

Further, this Court abstains from entertaining Hunter's claims against Guite and Henderson insofar as those claims are based on their actions in the Niagara County Family Court proceedings, and those claims are dismissed without leave to amend for that reason as well. *See* Docket Item 73 at 17-26. Indeed, in light of Judge Roemer's finding that Hunter has failed to state a claim against either of those defendants, *id.* at 27-44 & n.17—an analysis with which this Court wholly agrees and to which Hunter has failed to raise any colorable objection, *see* Docket Item 74—the Court could dismiss sua sponte all of Hunter's claims against Henderson and Guite. *See Piuggi v. Good for You Prods. LLC*, 2024 WL 3274638, at *5 (S.D.N.Y. July 2, 2024) ("[A] district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted" as long as "the plaintiff [has had] an opportunity to be heard." (collecting cases)).

Nonetheless, the Court will afford Hunter one final opportunity to be heard on these claims. Within 45 days of the date of this order, Hunter shall show cause why her remaining claims against Henderson and Guite should not be dismissed. If she fails to do so, those claims also will be dismissed.

## CONCLUSION

For the reasons stated above and in the second R&R, the motions to dismiss filed by the judicial and county defendants, Docket Items 61 and 64, are GRANTED.

Hunter is ordered to show cause, within **45 days of the date of this order**, why her remaining claims against Henderson and Guite should not be dismissed. If she fails to do so, the Clerk of the Court shall close this case without further order.

SO ORDERED.

Dated: September 30, 2024
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE